## Minnie A. Eggleston, Appellee, v. The Fair, Appellant.

## Gen. No. 16,096.

1.  CORPORATIONS—*what essential to bind.* A corporation can only act by and through its agents and representatives and it cannot make an agreement except by and through such of its agents as are authorized to bind it.

2.  INSTRUCTIONS—*submitting questions of law.* An instruction should not be given which allows the jury to construe the effect of the allegations of the declaration.

Appeal from the Circuit Court of Cook county; the HON. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed February 14, 1912.

WILLIS SMITH, HENRY L. WALLACE and WALTER F. HEINEMANN, for appellant.

EDWARD H. MORRIS, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

About May 1, 1905, appellee, who before that time was employed by appellant as sales lady in the department of ladies' suits in its store, was made head of stock in the department of ladies' coats. As sales lady, she received $15 per week, and the preponderance of the evidence shows that she received in addition thereto certain commissions on sales. As head of stock, she was to receive the same weekly compensation, and she claims she was guaranteed that the commissions would not be less than $500 between May 1, 1905, and the end of that year. She further claims that her contract for employment in the first instance, and her transfer to the head of stock in the coat department, was made by one Whitehouse acting in behalf of appellant. The $15 per week salary was paid, but appellee received no commissions after she

became head of stock in the coat department. This suit was brought to recover the claimed guaranteed commissions. Appellee recovered a judgment of $500.

It is claimed by appellant that the proof is not sufficient to warrant a finding that appellee was unconditionally guaranteed $500 in commissions, as claimed by her, or to show that Whitehouse had any authority to make the contract of employment. It is not denied that appellee was employed by appellant as sales lady in the department of ladies' suits, or that while she was so employed she was to receive, and in fact did receive, from appellant $15 per week. Neither is it denied that she was employed by appellant as head of its department of ladies' coats.

Appellee testified in reference to her employment by appellant that he (Whitehouse) "told me if I could come to The Fair that he would give me charge of the ladies' suits with a percentage which amounted to a number of hundred dollars." "I remained in that department just one year. I next had a conversation with Mr. Whitehouse the first week in April, 1905. He asked me how I would like to take charge of the ladies' coats and I told him that I would be very glad to if I could better myself, and he said, 'Well, you get that percentage,' and I asked him how much that percentage would amount to, and he said he could not tell exactly, it would be in the neighborhood of $800 or $900, but he said it was the best department of his section; his section was called "Store 428," which took the ladies' suits, furs, waists, skirts and ladies' coats, but he said, 'We guarantee you the very lowest figure of a $500 check before the first of the year.'"

Whitehouse, who was an employe of appellant in the capacity of manager and buyer in its department of suits and cloaks and who had under him from 75

to 125 persons, among which was appellee, and who was called as a witness for appellant, referring to the time he first approached appellee to induce her to enter the employment of appellant, testified: "She said she did not want to change unless she could do better. I offered her $15 a week and she accepted." He further testified to a conversation with appellee about becoming head of the coat or cloak department as follows: "I asked her how she would like to take charge of the stock. She said she would. She wanted to know what was in it for her. I told her we would pay her $15 a week and give her a bonus on the sales, provided the profits was maintained in the department, and she accepted it that way. * * * I told her about the bonus, if she would get $25,000 increase, she would get a check for $250. If she would get another $25,000, she would get $500, provided the profits were maintained in the department."

Appellee on rebuttal pointedly denied that there was anything said by Whitehouse about the commissions being contingent or conditional on the sales amounting to any given sum.

We think the fact that all the negotiations in relation to the employment of appellee by appellant were had with Whitehouse, together with the fact that her services were accepted by appellant, and that appellee was paid her weekly wage of $15 by appellant during the whole time she worked there, without objection or question about the regularity of her employment, was sufficient to warrant the jury in finding that Whitehouse was the authorized agent of appellant to employ appellee, and that his acts, whether originally authorized or not, were fully ratified by appellant, and that in either case appellant was bound by whatever the contract made by Whitehouse acting for appellant was.

As to the terms of the contract, there is but one

point of difference, and that is whether there were
any conditions to the contract to pay commissions.
On this point there are some circumstances corrobo-
rating appellee.  Appellee testified that, as sales lady
in the suit department, she received $15 per week and
certain commissions, which she said ran from $10 to
$13.50 per week, which would amount to from about
$500 to about $700 per year.  The witness, Anna Jur-
genson, testified that during the year 1904 sales ladies
in the suit department received commissions on sales.
When Whitehouse proposed that appellee should take
the position of head of stock in the cloak department,
she at once inquired what advantage it would be to
her.  He told her that she would get $15 per week,
which was the same regular salary she was then get-
ting, and then made some statement as to the commis-
sions sufficiently favorable to her so that she accepted
the position.  If appellee, as sales lady in the suit de-
partment, was receiving commissions in addition to
her $15 per week salary, that was a circumstance
worthy of consideration by the jury in determining
whether she would be likely to accept the proffered
new position without a guarantee that she would re-
ceive at least the minimum amount she was receiving
in the position then occupied by her.  The jury, after
availing themselves of all aids for determining the
credibility of the witnesses and the weight that should
be given to their testimony, adopted appellee's theory
as the true one, and we are not prepared to say they
were not justified in so doing.

The following instruction was given at the request
of appellee:

"If from the evidence in this case the jury believe
that the defendant The Fair—by and through its
agent or representative, made an agreement with the
plaintiff to pay her $15 a week and not less than $500
commission, as alleged in the declaration—then the
jury should find a verdict in favor of the plaintiff."

Appellant complains of the giving of this instruction for two reasons. First, because the words "agent or representative" were not preceded by the word "authorized" or some equivalent expression, and second, because it refers to the agreement made by appellant "by and through its agent or representative, as alleged in the declaration," when the declaration consists of the common counts only and contains no averment of any agreement so made. We think appellant misconstrues the import of the instruction. There is nothing in this instruction that is predicated on the question of agency. The only purpose in giving this instruction was to inform the jury that if they believed from the evidence that appellant made an agreement with appellee to pay her $15 per week and not less than $500 commission, then she was entitled to recover. Under this instruction the point the jury was called upon to decide was whether appellant had made the agreement recited in the instruction, not how or through whom it was made, but was it made. The words "by or through its agents or representatives" might well have been omitted. Appellant was a corporation and could only act by and through its agents or representatives, and could not make an agreement except by and through such of its agents as were authorized to bind it. Any agreement made by an agent not authorized to make it would not be its agreement. A finding by the jury that appellant made the agreement would be a finding that it was made by and through its authorized agent.

As to the second objection, it will be noted that the agreement which must be found to exist before the jury could find the issues for appellee was fully set out in the instruction. There was nothing left to be gathered from an inspection or consideration of the declaration by the jury. Adding the words "as al-

leged in the declaration," did not alter the instruction or leave in doubt what the jury must find the facts to be before they could find the issues for appellee.  The instruction, as given, amounted to telling the jury that under the declaration if the jury believe from the evidence that appellant made an agreement with appellee to pay her $15 per week and not less than $500 commission, the finding of the jury should be for appellee.  Instructions have been criticised in which the jury have been told that, if the jury believe from the evidence that the plaintiff has made out a case, "as charged in the declaration," then the verdict should be for the plaintiff.  The vice in such an instruction is that it leaves the jury to determine what the allegations of the declaration amount to.  The instruction complained of here is not subject to that criticism for the reasons stated.

It is lastly contended that the court erred in its rulings on the admission of evidence in two instances. The rulings complained of were each made during the introduction of evidence for appellee in rebuttal. One instance was where the court overruled an objection of appellant to the admissibility of evidence tending to show what compensation appellee received while employed by Chas. A. Stevens.  This evidence was admissible to rebut the testimony of Whitehouse, who had testified, at the instance of appellant, to an amount he claimed appellee had received while working for Stevens.  If the amount of wages appellee received at Stevens' was not a proper subject of inquiry, appellant should not have gone into it.  Having done so, it cannot complain that appellee was permitted to show what the facts were as appellee understood them.  The other instance was where the court overruled an objection to the admissibility of evidence concerning a claimed conversation between appellant's witness, Whitehouse, and the witness,

Miss Jurgenson, concerning appellee's commission as head of stock, which Whitehouse had testified, in answer to a proper question asked on cross examination, did not take place. This evidence was also proper rebuttal evidence, and the objection of appellant to its admission was properly overruled.

Finding no error in the record, the judgment of the court below will be affirmed.

*Judgment affirmed.*